IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KENT DAVID BURSTEIN,

    Debtor/Appellant,

    v.

YVETTE NONTE

    Creditor/Appellee.

Case No. 2:22-cv-267

**MEMORANDUM OPINION & ORDER**

    Before the Court is Debtor/Appellant Kent David Burstein's appeal of the United States Bankruptcy Court for the Eastern District of Virginia's order granting summary judgment on the dischargeability of his debt to Creditor/Appellee Yvette Nonte. ECF No. 1. The Court has fully considered the arguments set forth in the parties' briefs and has determined that it is not necessary to hold oral argument. Fed R. Civ. P. 78; E.D. Va. Civ. R. 7(J). For the reasons stated below, the Court **AFFIRMS** the bankruptcy court's judgment.

**I.    BACKGROUND**

    Creditor Yvette Nonte and Debtor Kent David Burstein are former spouses. On or about April 27, 2011, they entered into a property settlement agreement ("separation agreement") that was subsequently incorporated but not merged into

their divorce. ECF No. 22-1 at 20.[1] Section 6 of the separation agreement, in relevant part, required the debtor to pay the creditor a portion of any cash distributions he received from his companies and to provide her with access to related accounting documentation. *Id.* at 22–25.

In March 2014, the creditor filed a lawsuit in Maryland state court seeking damages and declaratory relief for breach of fiduciary duty and breach of contract. ECF No. 22-1 at 33–39. The complaint alleged that the debtor breached Section 6 of the separation agreement. *Id.* The parties entered a May 2015 settlement agreement ("settlement agreement"), in which the debtor agreed to pay the creditor a sum in exchange for dismissal of the lawsuit with prejudice. *Id.* at 40–43. In addition, the parties agreed to "mutually release each other from any claims they have arising out of the events addressed by the pending litigation and under Section 6.A of the [separation agreement] regarding marital property." *Id.* at 40.

On June 27, 2019, the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia. ECF 22-1 at 209. The creditor filed an adversary complaint against the debtor in May 2020, alleging that the debt to her is nondischargeable pursuant to 11 U.S.C § 523(a)(15). *Id.* In March 2022, the Bankruptcy Court, having

---

[1] Both parties submitted appendices with their respective briefs. All citations herein will refer to the debtor/appellant's appendix. To avoid any confusion, the page numbers the Court cites will refer to the page number in the PDF, and *not* to the debtor/appellants numbering.

determined that the debt at issue was nondischargeable, entered summary judgment for the creditor. *Id.* at 223.

## II.   LEGAL STANDARD

When reviewing a decision of a bankruptcy court, a district court applies the same standard of review applied in federal courts of appeals. *Hilgartner v. Yagi*, 643 B.R. 107, 116 (E.D. Va. 2022). Therefore, this Court will review questions of fact for clear error and questions of law *de novo*. *Stancill v. Harford Sands* (*In re Harford Sands*), 372 F.3d 637, 639 (4th Cir. 2004).

Section 523 of the Bankruptcy Code governs exceptions to dischargeability. For a debt to be deemed nondischargeable under § 523(a)(15), the debt must (1) be to a spouse, former spouse, or child of the debtor, (2) not be a domestic support obligation, and (3) have been incurred during a divorce or separation or "in connection with a separation agreement, divorce decree, or other order of a court of record." 11 U.S.C. § 523(a)(15); *see Monassebian v. Monassebian* (*In re Monassebian*), 643 B.R. 388, 393 (Bankr. E.D.N.Y. 2022).

## III.   ANALYSIS

### A.   "In Connection With" Means a Logical or Causal Relationship.

The parties agree that the debt at issue is owed to a former spouse and does not qualify as a domestic support obligation. Thus, the sole question before the Court is whether the debt at issue was "incurred . . . in connection with a separation agreement." 11 U.S.C. § 523(a)(15). The Bankruptcy Code does not define "in

3

connection with" as it relates to § 523(a)(15), and there is no binding case law directly addressing the meaning of this statutory language.

When interpreting a statutory provision, the Court's analysis must begin "with the language of the statute itself." *Republic of Sudan v. Harrison*, 139 S.Ct. 1048, 1055–56 (2019); *see also Dwoskin v. Bank of America N.A*, 888 F.3d 117, 119 (4th Cir. 2018) ("In interpreting [a] statute . . . we look first to its language, giving the words their ordinary meaning.") (quotation marks omitted). The most natural reading of "in connection with" in this statutory context would require the debt to be logically or causally related to a separation agreement, divorce decree, or other order of a court of record. *See Connection*, Webster's Collegiate Dictionary (11th ed. 2012) (defining connection as a "causal or logical relation or sequence"); *see also Connection*, The American Heritage Dictionary of the English Language (5th ed. 2011) (defining connection as "[o]ne that connects, a link; [a]n association or relationship; [t]he logical or intelligible ordering of words; [r]eference or relation to something else").

This reading is also consistent with § 523(a)(15)'s legislative and drafting history. "The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007) (quotation marks omitted). This policy goal leads courts to generally read exceptions to discharge narrowly, in favor of the debtor. *See, e.g.*, *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999); *Cazenovia Coll. v. Renshaw (In re Renshaw)*, 222 F.3d. 82, 86 (2d Cir. 2000). However, in line with its

4

legislative history, courts have construed § 523(a)(15) liberally to restrict the circumstances under which a debt can be discharged. *See In re Monassebian*, 643 B.R. at 394; *Hanson v. Brown* (*In re Brown*), 541 B.R. 906, 910–11, (Bankr. M.D. Fla. 2015) ("Both the legislative history of the Bankruptcy Code and case law referring to this section illustrate that § 523(a)(15) should be construed broadly and liberally to encourage payment of familial obligations rather than to give a debtor a fresh start."). In other words, the legislative history indicates that Congress added § 523(a)(15) to broaden the scope of marital debts that are nondischargeable to ensure that a debtor "not use the protection of a bankruptcy filing in order to avoid legitimate marital and child support obligations." H.R. Rep. No. 103-825, at 54.

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005, § 523(a)(15) provided a debtor with two statutory defenses. The debtor could argue that discharge was appropriate either based on their inability to pay, or that discharge would result in a benefit to the debtor that would outweigh the cost to the former spouse. *Taylor v. Taylor* (*In Re Taylor*), 478 B.R. 419, 428 (B.A.P 10th Cir. 2012). BAPCPA eliminated both defenses and made debts falling within the scope of § 523(a)(15) nondischargeable without qualification. *Id.*

Several courts have acknowledged that these changes significantly expanded the scope of nondischargeable debts under § 523(a)(15) and reflect Congress's goal of ensuring the payment of familial obligations. *See Adam v. Dobin* (*In re Adam*), No. CC-14-1416, 2015 WL 1530086, at *4 (B.A.P 9th Cir. Apr. 6, 2015) ("The evolution of

5

§ 523(a)(15) demonstrates Congress's intent to spread as large a net, and to include as many marriage dissolution-related claims as possible, within this exception to discharge."); *In re Monassebian*, 643 B.R. at 394 (stating that the elimination of the balancing test reflects "Congress's strong policy in favor of protecting ex-spouses and children and the intent to cover any matrimonial debts that should not be justifiably discharged") (quotation marks omitted).

As the bankruptcy court noted, "courts around the country have recognized that § 523(a)(15) should be broadly and liberally construed to encourage payment of familial obligations rather than to give a debtor a fresh financial start."[2] Thus, the plain meaning of the statutory language, its drafting history, and its legislative

---

[2] ECF No. 22-1 at 215 (internal citations omitted); *see also Gamble v. Gamble* (*In re Gamble*), 143 F.3d. 223, 225 (5th Cir. 1998) (stating that courts are correct to give § 523(a)(15) "the full reach implicated by its plain language"); *Crosswhite v. Crosswhite* (*In re Crosswhite*), 148 F.3d 879, 882 (7th Cir. 1998) (stating that the legislative history of § 523(a)(15) reflects the same policy interest in protecting former spouses as § 523(a)(5)); *In re Taylor*, 478 B.R. at 428 n. 26 ("Because Congress enacted § 523(a)(15) to broaden the types of marital debts that are nondischargeable beyond those described in § 523(a)(5), by implication a § 523(a)(15) exception from discharge would also be construed more liberally than other § 523 exceptions."); *In re Brown*, 541 B.R. 906, 910–11, (Bankr. M.D. Florida 2015) ("Both the legislative history of the Bankruptcy Code and case law referring to this section illustrate that § 523(a)(15) should be construed broadly and liberally to encourage payment of familial obligations rather than to give a debtor a fresh start."); *In re Adam*, 2015 WL 1530086, at *5 ("Because Congress enacted § 523(a)(15) to broaden the types of marital debts that are nondischargeable . . . by implication a § 523(a)(15) exception would also be construed more liberally than other § 523 exceptions.") (quotation marks omitted); *see also Wetmore v. Markoe*, 196 U.S. 68, 77 (1904) ("[B]ankruptcy law should receive such an interpretation as will effectuate its beneficent purposes, and not make it an instrument to deprive dependent [spouse] and children of the support and maintenance due them from the [debtor], which it has ever been the purpose of the law to enforce.").

history support reading "in connection with" liberally to mean a logical or causal relationship with a separation agreement.

> **B. The Debt at Issue is Causally Connected to the Separation Agreement.**

Now, the Court must determine whether the debt at issue is logically or causally connected to the separation agreement. The debtor raises two arguments that the debt at issue is not "in connection with" the separation agreement. First, he argues that the combined effect of each agreement's release clause is to change the nature of the debt. ECF No. 18 at 18. Second, the debtor claims that the settlement agreement constitutes a novation and is therefore separate and distinct from the separation agreement. *Id.* at 33. The Court finds that the separation agreement is a but-for cause of the debt. Neither of the debtor's arguments to the contrary change the nature of the underlying debt.

> ***i. The separation agreement is a but-for cause of the settlement agreement.***

There is a direct causal link between the debt at issue and the separation agreement. It is undisputed that the creditor brought a lawsuit against the debtor to enforce the terms of the separation agreement. ECF No. 22-1 at 30–36. Further, it is undisputed that the creditor's enforcement lawsuit was settled, and those terms are embodied in the settlement agreement. *Id.* at 40–43. Without the separation agreement there would have been no lawsuit to settle. Thus, the separation agreement is a but-for cause of the settlement agreement.

7

The connection between the two agreements is evidenced in the language of the settlement agreement. Its opening paragraph states that the settlement agreement resolves "outstanding issues arising out of [the separation agreement] . . . entered into in connection with [the creditor and debtor's] divorce." ECF No. 22-1 at 40. Paragraph 21 states that the parties understand that the debt under it is non-taxable "as per Section 6.A of the [separation agreement] regarding marital property." *Id.* at 42. Paragraph 30 states that "to the extent that they are not inconsistent with this [settlement agreement], the terms of the [separation agreement] remain in effect." *Id.* at 43.

As detailed earlier, § 523(a)(15)'s language is intentionally broad, and it is broad enough to cover this situation, making the debt non-dischargeable. This result is consistent with the findings of several courts that have dealt with analogous scenarios. *See, e.g., Beale v. Kurtz* (*In re Beale*), 381 B.R. 727, 732 (S.D. Ind. 2008) (finding that the post-divorce agreement did not change the fundamental nature of the debt and equating it to a "refinancing of an old loan"); *In re Monassebian*, 643 B.R. at 396 (finding that "[t]he debt did not automatically become dischargeable simply because it is one step removed from [the separation agreement]"); *Kim v. Raines* (*In re Raines*), No. 3:19bk30420, 2021 WL 262113, at *3 (Bankr. S.D. W. Va. Jan. 19, 2021) (finding the debt nondischargeable because the "decretal judgment directly stem[med]" from the debtor's noncompliance with the parties' divorce decree). While the debt at issue is one step removed from the

8

separation agreement, it is nevertheless evident that the separation agreement remains a but-for cause of the debt.

### ii. *Neither release clause breaks the connection.*

The debtor asserts that the combined effect of each agreement's release clause is to change the nature of the debt. The debtor points to Paragraph 7 of the settlement agreement, which states that the parties "release each other from any claims" arising under Section 6 of the separation agreement, to argue that the connection between the separation agreement and the debt is "extinguished." ECF Nos. 22-1 at 40 and 18 at 18. Additionally, because the creditor agreed to release any claim of marital obligation in the separation agreement, the debtor argues that none of the debt at issue can be characterized as such. ECF No. 18 at 18.

This argument is beside the point. The Court's task is to determine whether the debt at issue was incurred "in connection with" the separation agreement. The fact that the creditor agreed not to bring claims under the separation agreement, and instead agreed to bring them under the settlement agreement, does not change the fact that the separation agreement is a but-for cause of the debt.

The Court also notes that the debtor makes specific arguments about the effects of release under Maryland state law. However, the question of dischargeability is squarely a question of federal law. *Grogan v. Garner*, 498 U.S. 279, 284 (1991) ("Since 1970 . . . the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code."). If the question before the Court were whether the creditor released her claims under the

9

separation agreement, then the Maryland law that the debtor references would be relevant. But that is not the question the Court must answer. The task here is straight-forward—determine whether the debt at issue is "in connection with a separation agreement." 11 U.S.C § 523(a)(15). Based on the record before it, this Court agrees with the bankruptcy's court's well-reasoned analysis of that central question.

### iii. Whether the settlement agreement constitutes a novation does not change the nature of the underlying debt.

Next, the debtor argues that the settlement agreement constitutes a novation, which makes it separate and distinct from the separation agreement. ECF No. 18 at 33–39. Like his argument regarding the effect of the release clauses, this argument is beside the point. Even assuming that the settlement agreement constitutes a novation, such a conclusion does not change the nature of the underlying debt.

The Supreme Court's decision in *Archer v. Warner,* 538 U.S. 314 (2003), is instructive on this point. *Archer* held that reducing a fraud claim to settlement does not change the fact that the money was obtained by fraud, and thus, nondischargeable. *Id.* at 319. In doing so, the Supreme Court reiterated its instruction that lower courts look "into the true nature of the debt" when making dischargeability decisions. *Id.* at 320–21 (quoting *Brown v. Felsen*, 442 U.S. 127, 138 (1979)).

The debtor argues that *Archer* is not applicable here because it did not create a bright-line rule that debt based on fraud cannot be settled or released. ECF No. 24

10

at 3–7. The Court agrees that *Archer* did not create a bright-line rule. However, *Archer*'s general principle that the underlying nature of a debt does not change based on the agreement in which it is embodied is applicable and guides the Court in this case. *See Hilgartner*, 643 B.R. at 117 (viewing the issue of whether settlement of a lawsuit changes the nature of the debt from a tort claim to a contract claim such that it is nondischargeable under § 523(a)(6) as "squarely resolved by the [Supreme Court] in *Archer*"). *Archer* tells us that the Court is not precluded from looking at the underlying separation agreement that created the obligations that gave rise to the settlement agreement. Put differently, *Archer* instructs the Court that "in the dischargeability context . . . a tiger does not change its stripes." *Remy v. Barton (In re Barton)*, 321 B.R. 869, 874 (Bankr. N.D. Ohio 2004) (analyzing the Court's holding in *Archer*). In this case, the debt at issue did not "change its stripes" and become dischargeable simply because it is no longer embodied in the separation agreement.

### C. The Debtor/Appellant's Constitutional and Policy Arguments Also Fail.

In addition to his arguments regarding the causal connection, the debtor raises both a constitutional and a policy-based argument to the bankruptcy court's interpretation of "in connection with."[3] For the reasons outlined below, the Court finds these arguments unpersuasive.

---

[3] The parties dispute whether the debtor properly preserved these arguments. Issues must be raised in lower courts to be preserved "as potential grounds of decision in higher courts." *Wards Corner Beauty Acad. v. Nat. Accrediting Comm'n*

First, the debtor argues that the bankruptcy court erred as a matter of law because its application of § 523(a)(15) prohibits and preempts the creditor's right to contract. ECF No. 18 at 40–44. The debtor does not cite a specific Constitutional provision to support his assertion. He cites to two *Lochner*-era Supreme Court cases—*Truax v. Corrigan*, 257 U.S. 312 (1921) and *Chas. Wolff Packing Co. v. Court of Indus. Relations*, 262 U.S. 522 (1923)—both of which were substantive due process cases. ECF No. 18 at 42. To the extent that the debtor is relying on substantive due process for his constitutional right-to-contract claim, more recent Supreme Court cases have largely foreclosed that argument. *See West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 392 (1937) (overruling *Adkins v. Children's Hospital*, 261 U.S. 525 (1923) and stating that "the freedom of contract is a qualified, and not an absolute right . . . [t]he guaranty of liberty does not withdraw from legislative supervision the wide department of activity which consist of the making of contracts") (quotation marks omitted).

---

*of Career Arts & Sciences*, 922 F.3d. 568, 578 (4th Cir. 2019) (quotation marks omitted). To preserve an issue for appeal, a party "must press and not merely intimate the arguments during the proceedings before the [lower court]." *Id.* In his memorandum in support of summary judgment, the debtor made both arguments. ECF No. 22-1 at 147–48 (arguing that to accept the creditor's characterization would "destroy the ability of debtors to negotiate with finality with former spouses" and "suggests a policy that rejects [the creditor]'s ability to freely negotiate and release any divorce related debt"). In doing so, the debtor preserved these arguments for appeal.

12

Next, the debtor argues that the bankruptcy court's decision, as a matter of policy, is a "paternalistic"[4] application of § 523(a)(15) because "it suggests that all debtors will never be able to negotiate with finality with a former spouse" and "rejects [the creditor]'s ability to freely negotiate and release any divorce related debt." ECF Nos. 18 at 40, 44. The Court finds the merits of the debtor's argument unavailing for at least three reasons.

The debtor asserts that affirming the bankruptcy court's order would "potentially set[] precedent that former spouses could never, under any circumstances, freely, negotiate for dischargeability." ECF No. 24 at 8. This argument mischaracterizes the bankruptcy court's rather narrow holding and ignores the statutory language at issue. First, the bankruptcy court's holding (and this Court's affirmance of that holding) does not create a bright-line, categorical rule that there are no circumstances under which former spouses could negotiate for dischargeability. The bankruptcy court's judgment, and this Court's decision affirming it, simply stand for the proposition that an agreement whose opening

---

[4] This is but one example of the pervasive disrespectful and inflammatory language and tone debtor's counsel uses when referring to the bankruptcy court and its judgment. The Court reminds debtor's counsel that, as members of the legal profession practicing before this Court, they are expected to comport themselves with courtesy and respect, even as they provide their clients with zealous advocacy (as they have here) and even when they disagree vehemently with a court's decision. Va. Bar Ass'n, *Principles of Professionalism for Virginia Lawyers*, https://perma.cc/49SS-35TE (last visited August 17, 2023) ("In my conduct toward courts and other institutions with which I deal, I should: treat all judges with respect and courtesy . . . avoid any conduct that offends the dignity or decorum of any courts or other institutes such as . . . unbecoming language directed at the courts or any other participants.").

13

paragraph states that it is resolving "outstanding issues arising out of [the separation agreement] . . . entered into in connection with [the creditor and debtor's] divorce" is the kind of case to which § 523(a)(15)'s dischargeability exception applies. ECF No. 22-1 at 40.

Second, this argument ignores the rest of the statutory language. Section 523(a)(15) applies only to debts incurred "in the course of a divorce or separation" or "in connection with a divorce decree, separation agreement, or other order of a court of record." 11 U.S.C § 523(a)(15). It is not applicable in any other case. For example, it is not applicable in the context of former spouses who are also in a landlord/tenant relationship or who are business partners. *See Tracy v. Tracy* (*In re Tracy*), No. 06-40044, 2007 WL 420252, at *3 (Bankr. D. Idaho Feb. 2, 2007) (finding the debt dischargeable because it arose from the parties' new landlord/tenant relationship and "subsequent dealings . . . unrelated to the dissolution of the parties' marriage"); *see also Gilman v. Golio* (*In re Golio*), 393 B.R. 56, 62 (Bankr. E.D.N.Y 2008) (holding that the debt is nondischargeable because "there was no landlord-tenant or other type of relationship between [the parties] that would render the [debt] outside the scope of the [d]ivorce [j]udgment"). In either context, the existence of a non-marital relationship may break the link between a debt and a separation agreement.

Further, it is the *debtor's* interpretation of the statutory language that leads to results that directly contradict Congress's clearly stated intent. The debtor's proposed interpretation creates an incentive to breach separation agreements so

14

that debts can be discharged in bankruptcy. Essentially, if an individual wants to be able to discharge their divorce debt, all they would need to do is breach the separation agreement and then settle the subsequent enforcement lawsuit. As detailed above, Congress's intent in including this exception was to protect former spouses and to ensure that debtors do not use the bankruptcy process to shirk their marital obligations. *See* H.R. Rep. No. 103-825, at 54. The debtor's arguments—at nearly every turn—run counter to that stated goal.

## IV.   CONCLUSION

For the reasons explained above, it is hereby **ORDERED** that the judgment of the Bankruptcy Court as to the dischargeability of the Creditor/Appellee's debt incurred in the May 2015 settlement agreement is **AFFIRMED**.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record and to close this civil action.

**IT IS SO ORDERED.**

/s/ *JKW*
Jamar K. Walker
United States District Judge

Norfolk, Virginia
August 23, 2023